# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **MICHAEL X ST. MARTIN, ET AL** | **CIVIL ACTION** |
| **VERSUS** | **NO. 08-3735** |
| **CINDY T. CENAC, ET AL.** | **SECTION B(3)** |

## ORDER AND REASONS

Before the Court is Plaintiffs' Motion for Partial Summary Judgment on Prescription of Conventional Predial Servitude. (Rec. Doc. No. 29). The motion is opposed. (Rec. Doc. 41). After review of the pleadings and applicable law, and for the reasons that follow,

**IT IS ORDERED** that Plaintiffs' Motion for Partial Summary Judgment is **GRANTED.**

## BACKGROUND

In 1992, St. Martin acquired property in Terrebonne Parish that has historically been used for oil and gas exploration, hunting, fishing, ranching, bird watching, and cattle ranching. The property lies about a mile from La. Hwy. 182 (formerly U.S. Hwy. 90), and St. Martin's acquisition of the property included rights under a predial servitude and right-of-way granted in 1980 to St. Martin's predecessor, Valhi, Inc., by a previous owner of the land between the St. Martin property and La. Hwy. 182, James Robbins. Exhibits to the Right-of-Way and Servitude Agreement, which was filed for registry in the public records of Terrebonne

Parish in 1980, describe the Valhi servitude as a 40' wide right-of-way, the centerline of which is the centerline of an existing shell road that intersects U.S. Hwy. 90 (currently La. Hwy. 182). (See Rec. Doc. 29, Ex. 1). The right-of-way continues about 3,278.02 feet "to the point of intersection with the property line between Valhi and Robbins." (Id.) At the base of the Valhi servitude is a 20 foot wide drainage ditch which lies on the border of the former Robbins and Valhi lands. There is wooden bridge on the Cenac property that crosses the ditch, the use of which is not explicitly described or listed in the servitude.

Ag-Lands acquired the servient estate from James Robbins and subsequently transferred the property to Cenac in 1989, who then donated the property to The Waterproof Trust ("The Trust"), for which Cindy T. Cenac is the trustee. The deed for each transfer of the servient estate was subject to general and special exceptions and reserved various servitudes and rights-of-way, including the right-of-way granted by Robbins to Valhi ("the Valhi servitude").[1] Following purchase of the property, St. Martin contacted Cenac by letter to inform Cenac of their acquisition of the Valhi servitude

---

[1] Both Cenac deeds, conveying the property from AG to Cenac and from Cenac to The Trust, include exhibits which list exceptions pertaining to the property, both listing as exception #40 the Valhi servitude:

> 40. Right-of-Way and Servitude Agreement granted by James G. Robbins to Valhi, Inc. Dated 7/17/80, recorded in COB 802, folio 592, Entry No. 629444.

(Rec. Doc. 29, Ex. 3 at 12 and Ex. 4 at 8)

rights.  St. Martin also requested keys for any locked gates on the servitude at the time, and Cenac complied, providing keys to St. Martin.

In 2003, St. Martin agreed to lease a portion of his property to the U.S. Department of the Interior Fish and Wildlife Service ("FWS") for use as a nature trail near the Mandalay Wildlife Refuge; such lease was executed in 2005 and the nature trail opened in 2007.  On or around December 15, 2005, the FWS notified Cenac of the nature trail and offered to construct various remote controlled and automatic gates, a wooden privacy fence, rolling gates to facilitate movement of Cenac's equipment, and speed limit and direction signs.  Plaintiffs assert that Cenac ignored these offers and instead took actions to hinder and/or prevent or make inconvenient the use of the servitude.  Such alleged actions include construction of a fence that decreases the usable width of the servitude, "maintenance of a gate preventing access in after-work hours, weekends, and holidays, and harassment of nature trail visitors," and dumping trash on the St. Martin property.  (Rec. Doc. 41 at 4).  In addition, Cenac at some point changed the lock on a gate preventing St. Martin and his assigns use of the right-of-way.  St. Martin cut a portion of the gate to regain access to his property, and Cenac filed a complaint with the La. Office of Attorney General, complaining that St. Martin committed felony damage.  St. Martin was subsequently subject to criminal

investigation.

St. Martin filed suit seeking judgment on the validity and dimensions of the Valhi servitude, an injunction against Cenac for actions adverse to full exercise of the servitude, and claims for money damages for interference with the use and enjoyment of the servitude, trespass, and malicious prosecution. The United States aligned as a party plaintiff. Cenac answered and filed a counterclaim, asserting that the Valhi servitude was extinguished for nonuse of ten years from 1980-1990 and that St. Martin acquired a limited right of passage of 15-feet due to permissive use of the shell road from 1992-2002. Plaintiffs have filed the present motion for partial summary judgment seeking denial of Cenac's prescription defense.

Plaintiffs argue that the Valhi servitude has not prescribed because no single ten-year period of nonuse ever existed from 1980 to present. In support Plaintiffs present the testimony of persons who traversed the servitude throughout the 1980s, including St. Martin, Melvin Henry, who used the servitude to access the Valhi property for exploring, and Calvin Ortego, who used the servitude to hunt on the dominant estate several times a year form the 1960s to 1992. Plaintiffs further argue that under La. Civ. Code Ann. Art. 3464 any prescription for nonuse is interrupted by acknowledgment by the owner of the servient estate and that Cenac made such acknowledgment in 1989 when it purchased the property

4

from Ag-Lands. With respect to any argument that a vehicle could not have made full use of the Valhi servitude to enter the Valhi lands because of the ditch, Plaintiffs argue that partial use of the servitude constitutes use of the whole under La. Civ. Code art. 759. Plaintiffs further argue that "either vehicular or pedestrian traffic is sufficient to preserve a servitude against ten years prescription." (Rec. Doc. 29-3 at 8).

Defendants' opposition makes multiple references to other servitudes/rights-of-way and notes that the survey attached to its first deed does not reference a 40'foot right-of-way. While Defendants acknowledge the testimony of St. Martin, Melvin Henry, and Calvin Ortego referenced by Plaintiffs, Defendants point out that these persons utilized the remnants of a bridge to cross the ditch to enter the dominant estate. Defendants assert that this bridge is not part of the servitude and these persons therefore did not use the servitude to gain access to the Valhi property but trespassed on Cenac property.[2] Defendants argue then that "the

---

[2] Specifically Defendants argue:

... the accessory right was never used. That is, access to the property across the drainage ditch. The servitude itself was never used. The road was used up to the drainage ditch but after coming to the ditch or obstacle, no-use of the forty (40') foot right-of-way was ever made to access property of St. Martin, an accessory right. . . . Since actual use of the so-called Valhi forty (40') foot right-of-way could not be used, except by trespass outside of the forty (40') foot right-of-way, such access is not "use" and, therefore the ten year prescriptive period has run.

(Rec. Doc. 41-2 at 5, 6).

Louisiana Civil Code articles concerning partial use of a servitude do not apply because there was no use to access the St. Martin properties South of a drainage ditch." (Rec. Doc. 41-2 at 3).

Defendants reference Revision Comments-1977 of La. Civ. Code art. 759, which state that the articles "have no application to continuous servitudes or to discontinuous servitudes in the absence of limitations in title." (Rec. Doc. 41-2 at 4). Defendants argue that art. 759 is inapplicable because a right-of-way is a discontinuous servitude and the Cenac deeds contain no limitations regarding Cenac's title except for "a right of passage on that portion of the shell road running in a general North-South direction." *Id.* Defendants also cite La. Civ. Code art. 760 for the legal proposition that "more extensive use of the servitude than that granted by title does not result in the acquisition of additional rights for the dominant estate unless it be by acquisitive prescription." *Id.* Defendants, however, present these arguments with reference to a servitude on a portion of the shell road expressly reserved by Ag-Lands rather than the Valhi servitude referenced in the exceptions list attached as exhibits to the Cenac deeds, such exhibits explicitly referenced in said deeds. Defendants also argue that various obstacles, such as trees and utility lines prohibit a 40 foot wide servitude. However, the issue of the practicality of the width of the servitude or the rights of other servitudes to which the Valhi servitude may be

6

subject are not issues before the Court in this motion of partial summary judgment.

## DISCUSSION

**A.    Summary judgment Standard**

Summary judgment is proper if the pleadings, depositions, interrogatory answers, and admissions, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).  A genuine issue exists if the evidence would allow a reasonable jury to return a verdict for the nonmovant.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, (1986).   Although the Court must consider the evidence with all reasonable inferences in the light most favorable to the nonmoving party, the nonmovant must produce specific facts to demonstrate that a genuine issue exists for trial.  *Webb v. Cardiothoracic Surgery Assocs. of N. Texas,* 139 F.3d 532, 536 (5th Cir. 1998).  The nonmovant must go beyond the pleadings and use affidavits, depositions, interrogatory responses, admissions, or other evidence to establish a genuine issue.   *Id.*   Accordingly, conclusory rebuttals of the pleadings are insufficient to avoid summary judgment.  *Travelers Ins. Co. v. Liljeberg Enter., Inc.* 7 F.3d 1203, 1207 (5th Cir. 1993).

## B. Prescription of Servitudes

The use and extent of predial servitudes are regulated by the title by which they are created and, in the absence of such regulation, by La. Civ. Code arts 698-774. La. Civ. Code art. 697. "The servitude of passage is the right for the benefit of the dominant estate whereby persons, animals, or vehicles are permitted to pass through the servient estate." *Dupont v. Hebert*, 2006-2334 (La. App. 1 Cir. 2/20/08), 984 So.2d 800, 805. A right-of-way is an affirmative servitude. *Id*. A right of passage, or right of way, is a servitude, and "when it is a result of a contract, its extent and mode of use is regulated by that contract." *White v. Durrwachter*, 431 So.2d 65, 67 (La. App. 1 Cir. 1983). "When the title provides the exact dimensions of the area affected by the servitude, the title must be given full effect." *Id*.

A predial servitude "is preserved by the use made of it by anyone, even a stranger, so long as it is used as appertaining to the dominant estate." *Id*. at 806 (*citing Palace Properties, L.L.C. v. Sizeler Hammond Square Limited Partnership,* 01-2812 (La.App. 1st Cir.12/30/02), 839 So.2d 82, 94, *writ denied,* 03-0306 (La.4/4/03), 840 So.2d 1219, and LSA-C.C. art. 757). "So long as it is used as appertaining to the dominant estate" requires that someone must use the property for the purpose of going onto that property for some legitimate purpose, either to see the owner or for something connected with the use of that property. *Id. (citing Latour v.*

*Francis,* 417 So.2d 485, 489 (La.App. 1st Cir.), *writ denied,* 420 So.2d 983 (La.1982)).

A predial servitude is extinguished by nonuse for ten years. La. Civ. Code art. 753. *See also Dupont*, 984 So.2d at 806 (*citing Church v. Bell,* 00-0286 (La.App. 1st Cir.3/28/01), 790 So.2d 82, 84 n. 3, *writ denied,* 01-1214 (La.6/15/01), 793 So.2d 1247). Prescription of nonuse for an affirmative servitude is measured from the date of its last use. La. Civ. Code art. 754; *Dupont*, 984 So.2d at 806. When the prescription of nonuse is pleaded, the owner of the dominant estate has the burden of proving that someone has made use of the servitude as appertaining to the dominant estate during the period of time required for the accrual of prescription, "such that no consecutive ten-year period of nonuse occurred." *Id.;* La. Civ. Code art. 764. A partial use of a servitude constitutes use of the whole. La. Civ. Code art. 759; *see also Church v. Bell*, 2000-0286 (La. App. 1 cir. 3/28/01) 790 So. 2d 82, 85 ("use of any part of a servitude preserves the servitude on the whole tract"). Therefore, "the use of a part of the area burdened with a predial servitude interrupts the prescription of nonuse as to the entire area." *Dupont*, 984 So.2d at 806. Furthermore, "either vehicular or pedestrian traffic is sufficient to preserve a servitude against ten years' prescription." *Church*, 790 So.2d at 85.

Acknowledgment of a servitude interrupts prescription. La.

9

Civ. Code 3464; *see also Baker v. Pena*, 20 La.Ann. 52 (1868); *Diefenthal v. Longue vue Management Corporation*, 561 So.2d 44, 55 n.10 (1990). Such acknowledgment "can be express or tacit, written or oral, and formal or informal." *Diefenthal*, 561 So.2d at 55 n.10. Acceptance of a title recognizing a servitude can be enforced as against the grantee/purchaser during a new term for prescription. *Baker*, 20 La. Ann. at 52. Where prescription had not been acquired at the date of purchase, acceptance of such title interrupts prescription. *Id.*[3]

Louisiana courts have applied the relevant provisions of the Civil Code to find both that use of a portion of the servitude was sufficient to interrupt prescription and that the use of a bridge not specifically referenced by name in the right-of-way grant was not such a variance to constitute a deviation from the route designated in the grant. In *Dupont*, the court found that the fact that no one may have used the unpaved portion of a 40-foot servitude was "inconsequential, as use of a portion of the servitude was sufficient to interrupt the prescription of nonuse." 984 So.2d at 806.

---

[3] Defendants cite *Long-Bell Petroleum Co., Inc. v. Tritico*, 216 La. 426, 453 (1949)(evaluating a mineral servitude), stating that the Louisiana Supreme Court in that case "held that statement in a deed that it is subject to 'does not reinstall rights to a servitude which have prescribed.'" (Rec. Doc. 41-2 at 8). However, in the case *sub judice* the servitude had not prescribed when Cenac acquired the property in 1989, approximately nine years after grant of the right-of-way. Furthermore, *Long-Bell* is not analogous to the present case as *Long-Bell* involved mineral servitudes.

In *Grappe v. Williams*, 178 So.2d 782, 783 (La. App. 2 Cir. 1965), the servient estate owner argued that the dominant estate owner "deviated from the designated route and ... trespassed upon [the servient estate owner's] property" when the dominant estate owner used the surface of a dam to cross a bayou after the collapse of a bridge. Neither the bridge nor the dam was designated by name in the right-of-way grant as part of the route. *Id*. The court found that both the bridge and the dam served as "a connecting link between the roads located on opposite sides of the bayou." *Id*. Focusing on the purpose of the right-of-way grant to afford a passageway across the servient estate to the dominant estate and noting that there was no question or protest by anyone regarding use of the bridge or the dam for many years, the court concluded that "the use of the dam, as a portion of the passageway granted, was intended by the parties and contemplated in the grant." *Id*. The court further found that exclusive use of the dam after collapse of the bridge was "not such a variance from the route designated in the grant as to constitute deviation therefrom." *Id*.

The parties do not dispute that persons traveled upon portions of the Valhi servitude in efforts to reach the Valhi property during the 1980s. Defendants' argument that the servitude was not "used" because persons traveling on it to the Valhi property had to veer from the route described in the grant of the right-of-way to cross the drainage ditch to reach the Valhi property fails under

11

Louisiana law. As in *Grappe*, the bridge remnants are not specifically named in the route in the right-of-way grant but parties were aware of the ditch and the bridge remnants serve as a "connecting link" fulfilling the right-of-way grant purpose of passageway across the servient estate to the dominant estate. Additionally and again as in *Grappe*, for years no one complained about use of the bridge remnants to get to the Valhi property. The argument also fails in light of La. Civ. Code art. 759, which states that "a partial use of the servitude constitutes use of the whole." *See Dupont* in which the court found inconsequential nonuse of the unpaved portion of the 40 foot servitude when other portions had been used. 984 So.2d at 806.

*Dupont* and *Grappe's* applications of the Civil Code also lend guidance on evaluating Defendants' attempts to now restrict the 40 foot wide servitude to the 15 feet of the shell road upon an argument that only the shell road has been used. The Valhi servitude was recorded and is described in said recorded instrument as 40 feet wide with its centerline being the centerline of the shell road. Use of the shell road preserves the entire servitude and its use in conjunction with the slight route variance utilizing the bridge remnants to complete travel to the Valhi property in the 1980s interrupted prescription. The exception of the Valhi servitude is included in both Cenac deeds, complete with reference to its recorded location. Accordingly the Court finds that the

recorded Valhi 40 foot wide servitude is not prescribed.[4] Accordingly,

**IT IS ORDERED** that Plaintiffs' Motion for Partial Summary Judgment is **GRANTED.**

New Orleans, Louisiana, this 13th day of August, 2009.

**UNITED STATES DISTRICT JUDGE**

---

[4]The Court need not evaluate the parties' acknowledgment arguments having found interruption of prescription on the basis of actual use of the servitude.